UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
GILDA TESSER,

    Plaintiff,

 v.

BOARD OF EDUCATION OF THE CITY OF
NEW YORK, *et al.*,

    Defendants.
-----------------------------------------------------------X

**NOT FOR PUBLICATION**

MEMORANDUM & ORDER
97-CV-6719 (NGG)

GARAUFIS, United States District Judge.

  Gilda Tesser ("Plaintiff") brings this motion to vacate a jury verdict pursuant to Fed. R. Civ. P. 60(b), alleging that defense counsel made fraudulent representations to the court. Specifically, the Plaintiff alleges that defense counsel represented that Plaintiff could withdraw a resignation and that she had valid New York City teaching and supervisory licenses, and concealed a regulation that shows that Plaintiff could not withdraw her resignation and that her licenses were revoked. Plaintiff now moves this court to find that Defendants' counsel committed a fraud upon the court, to set aside the judgment, to order a new trial, and to sanction defense counsel. For the reasons set forth below, the Plaintiff's motion is DENIED.

**I. BACKGROUND**

  Plaintiff was hired as a teacher by defendant Board of Education of the City School District of the City of New York ("BOE") in September 1973. In September 1987, Plaintiff began serving as an assistant principal in Public School ("PS") 128, which was within the boundaries of Community School District No. 21 of the City School District of the City of New York ("District 21"). In July 1991, Plaintiff was appointed assistant principal of PS 177.

1

In September 1991, Plaintiff applied for the position of principal of PS 177. Plaintiff alleged that she experienced discrimination in the appointment process. After another person was appointed for the position, Plaintiff complained to the Chancellor of BOE ("Chancellor"), who referred the matter to a special commissioner of investigations. On September 21, 1993, the special commissioner found that Plaintiff was retaliated against for alleging discrimination, and afforded whistleblower status to Plaintiff.

In September 1993, BOE granted Plaintiff a leave of absence, during which time Plaintiff secured a position as an assistant principal in the Plainview/Old Bethpage Central School District. On June 30, 1994, after having been informed that her leave was expiring, Plaintiff sought and obtained additional leave to care for her newly adopted daughter. However, after BOE and District 21 learned that she continued to work full time for the Plainview/Old Bethpage Central School District, that leave was rescinded and she was directed to return to District 21. On November 18, 1994, BOE informed Plaintiff that her failure to report to work was deemed a resignation. On November 29, 1994, BOE sent to Plaintiff a "Notice of Termination of License and Services." Plaintiff continued working in the Plainview/Old Bethpage Central School District until June, 1996, when she was informed that she would not receive tenure.

Plaintiff brought this action in November 17, 1997 against Defendants BOE, District 21, the superintendent and president of District 21, and the principal of PS 128, alleging religious discrimination and retaliation in violation of New York State Human Rights Law ("NYSHRL"); New York Exec. Law §§ 290 *et seq.*; New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-107 *et seq.*; and Title VII of the Civil Rights Act of 1964 ("Title VII"); 42 U.S.C. §§ 2000e *et seq.*; 42 U.S.C. § 1983; the New York State Constitution, and New York State Education Law § 3020-a.

Defendants moved for summary judgment, alleging that Plaintiff was never terminated because she was free to withdraw her resignation at any time. In support of their motion, and in response to then-presiding Judge Sifton's order to submit affidavits regarding the status of Plaintiff's New York City license, Defendants submitted the Declaration of Marie DeCanio, Deputy Executive Director of Human Resources for BOE, which stated that Plaintiff's licenses were never revoked. (Declaration of DeCanio ("DeCanio Decl.") at ¶ 6, Ex. A.) DeCanio also explained that the Collective Bargaining Agreement ("CAB") in force during this period provides that Plaintiff could withdraw her resignation before the school year "following five years after the effective date of resignation." (Id. at ¶ 11, Ex. 6 at 60.) As a result, DeCanio provided sworn testimony that while Plaintiff's services were terminated at the time that she resigned, that Plaintiff could "apply for any vacant position in a Community School District and request withdrawal of . . . her resignation." (Id. at ¶ 14.) Judge Sifton partially granted Defendants' motion for summary judgment on claims related to the revocation of Plaintiff's license, finding that Plaintiff produced no evidence that her license had been revoked. Tesser v. Board of Education et al., No. CV-97-6719(CPS), Slip op. at 25 (July 21, 2000). The judge found that whether Plaintiff had been terminated was an issue of material fact, and denied summary judgment on these claims. Id.

At trial, Thomas Ryan, the Director of Human Resources during the time in which Plaintiff was deemed resigned, testified that he did not remember whether a license terminates upon resignation. (Transcript of Trial, Tesser v. Board of Education et al., No. CV-97-6719 ("Tr."), at 945.) He also testified that as of 1994, an employee deemed resigned had the right to rescind the resignation. (Id. at 958-59.) In Defendants' cross-examination of Plaintiff's damages expert, defense counsel stated "you know that she could have gone back to work at the

[BOE]." (Tr. at 1520.) In Defendant's closing statement, counsel stated that Plaintiff knew that her New York City license had not been revoked because she swore under oath in 1996 to that effect, and that "[a]ll she has to do is ask for her resignation to be withdrawn and it is." (Id. at 1293.) On July 27, 2001, a jury rendered its verdict in favor of the Defendants.

Plaintiff, on August 10, 2001, moved to set aside the verdict, and for this court to grant judgment in favor of Plaintiff, and in the alternative for a new trial, which I denied on March 11, 2002. Plaintiff filed a notice of appeal in April 2002, and on June 29, 2004 the Second Circuit affirmed the judgment. Plaintiff now moves again to vacate the judgment, for a new trial, and for sanctions against Defendants' counsel. In her *pro se* motion, Plaintiff alleges that contrary to Defendants' averments at trial, BOE never rescinded her resignation even after she requested it, and BOE's own regulations explain that her license is terminated.

At this time, I will also consider Plaintiff's allegation that Chancellor's Regulation C-205, which she recently discovered, explains that she cannot withdraw her resignation. Paragraph 26(b) of Chancellor's Regulation C-205, titled "Resignation," provides that:

> [T]he resignation by a member of the teaching and supervising staff shall be deemed to be a resignation from the pedagogical service of the public school system . . . . Resignations shall be submitted in writing and, once submitted by an employee, shall be considered final . . . .
>
> b.   Absence Without Notice  As provided by contractual agreements, any pedagogical employee who is absent without notice for twenty or more consecutive school or work days is deemed to have resigned as of the first day of such absence. Notwithstanding any other regulation, withdrawal of such a resignation may not be permitted without express written authorization by the Chancellor.

(Tesser Decl. Ex. I ("Chancellor's Regulation C-205") at 14-15 (emphasis added).) Paragraph 28 of Chancellor's Regulation C-205, titled "Withdrawal of Resignation Generally," states that

4

"upon written request, a pedagogical employee who has resigned may, at the discretion of the Executive Director of the Division of Human Resources, be permitted to withdraw such resignation for the purpose of reinstatement to service . . . ." (Id. at 8.)

Plaintiff in her motion contends that Defendants' counsel knew that Defendants' allegations that she could withdraw her resignation was false, and thus that counsel's representations to the court that she could withdraw her resignation constitutes "a fraud upon the court".

Separate from Plaintiff's motions is her allegation that she is currently not eligible for employment at BOE. On July 14, 2005, I held a pre-motion conference in which Plaintiff alleged that she was barred from employment at BOE because her licenses were revoked after BOE deemed her to have resigned. (Transcript of the July 14, 2005 pre-motion conference ("Pre-Motion Conference Tr.") at 2-6). I asked Defendants to respond to this allegation and to state whether Ms. Tesser has the opportunity to apply for a BOE position. (Pre-Motion Conference Tr. at 12.)

## II. APPLICABLE LAW

### A. Standard of Review

Plaintiff brings this motion under Rule 60(b), which states:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for . . . (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud . . . misrepresentation, or other misconduct of an adverse party . . . . This rule does not limit the power of a court to . . . set aside a judgment for fraud upon the court.

Fed. R. Civ. P. 60(b). "'A motion for a new trial ordinarily should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a

5

miscarriage of justice.'" Atkins v. New York City, 143 F.3d 100, 102 (2d Cir. 1998) (quoting Lightfoot v. Union Carbide Corp., 110 F.3d 898, 911 (2d Cir. 1997)). Rule 60(b) "allows extraordinary judicial relief" and should be "invoked only upon a showing of exceptional circumstances." Nemaizer v. Baker, 793 F.2d 58, 61 (2d Cir. 1986 (citing Ben Sager Chemicals Int'l v. E. Targosz & Co., 560 F.2d 805, 809 (7th Cir. 1977)); see also United States v. Int'l Bhd. of Teamsters, 247 F.3d 370, 391 (2d Cir. 2001) ("A motion for relief from judgment is generally not favored and is properly granted only upon a showing of exceptional circumstances.").

As Plaintiff is a *pro se* litigant, her submissions are to "be held 'to less stringent standards than formal pleadings drafted by lawyers.'" Meiselman v. Byrom, 207 F. Supp. 2d 40, 41-42 (E.D.N.Y. 2002) (quoting Hughes v. Rowe, 449 U.S. 5, 9, 101 S. Ct. 173, 176, 66 L. Ed. 2d 163 (1980)). Courts should "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). However, *pro se* status "'does not exempt a party from compliance with relevant rules of procedural and substantive law.'" Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (quoting Birl v. Estelle, 660 F.2d 592, 593 (5th Cir. 1981)).

Plaintiff moves to vacate for "fraud upon the court". However, as Plaintiff is *pro se*, and is entitled to a broad reading of her motion, I shall touch briefly upon why Plaintiff's Rule 60(b) motion cannot survive for claims of "new evidence" or "fraud".

### B. *New Evidence*

A motion based on newly discovered evidence pursuant to Rule 60(b)(2) must show that the evidence was recently obtained, and "'could not have been found [before the trial] by due diligence.'" United States v. Potamkin Cadillac Corp., 697 F.2d 491, 493 (2d Cir. 1983)

6

(quoting Westerly Electronics Corp. v. Walter Kidde & Co., 367 F.2d 269, 270 (2d Cir. 1966)). See also Int'l Bhd. of Teamsters, 247 F.3d at 392. Motions to vacate based on new evidence must be brought within one year "after the judgment, order, or proceeding was entered or taken." Fed. R. Civ. P. 60(b).

This court cannot consider Plaintiff's "new evidence" allegation, because this motion is untimely. This motion is brought over four years after the verdict, and over three years after I denied the Plaintiff's last motion for a new trial. Even if this motion were timely, Plaintiff has failed to show that the Chancellor's Regulation C-205 could not have been found earlier by "due diligence." Potamkin Cadillac Corp., 697 F.2d at 49 (citing Int'l Bhd. of Teamsters, 247 F.3d at 392). Chancellor's Regulation C-205 is a public document, and has been unchanged since 1992. (Declaration of Gilda Tesser ("Tesser Decl.") Ex. I at 1.) Plaintiff explains that she first learned of Chancellor's Regulation C-205 on or around March 2005. However, Defendants submitted evidence that the regulation was available online in 2000, at the time in which the motion for summary judgment was under consideration. (Declaration of Joann Molter ("Molter Decl.") ¶ 6.) There is no evidence to show that Plaintiff, or her counsel at the time,[1] could not have obtained Chancellor's Regulation C-205 before the Defendants moved for summary judgment, or before trial. Therefore, even if timely, Plaintiff's motion to vacate could not be granted on the grounds of having obtained recently discovered evidence. See Schwartz v. Capital Liquidators, Inc., 984 F.2d 53, 54 (2d Cir. 1993).

---

[1]Although Plaintiff now represents herself in this motion *pro se*, she was represented by counsel through her trial.

### C. Fraud and Fraud Upon the Court

Plaintiff is also barred from bringing a Rule 60(b) motion for fraud, because Rule 60(b) limits allegations of fraud to "not more than one year after the judgment . . . was entered or taken." Fed. R. Civ. P. 60(b). As discussed supra, Plaintiff brings this motion over a year after the judgment was entered.

Plaintiff urges that alleged misrepresentations by Defendants' counsel regarding the withdrawal of her resignation and the status of her licenses amounted to fraud upon the court. Rule 60(b) "does not limit the power of a court to entertain an independent action to . . . set aside a judgment for fraud upon the court." Fed. R. Civ. P. 60(b). Fraud upon the court, which is distinct from fraud on an adverse party, "is limited to fraud which seriously affects the integrity of the normal process of adjudication." Gleason v. Jandrucko, 860 F.2d 556, 559 (2d Cir. 1988) (citing Kupferman v. Consolidated Research & Mfg. Corp., 459 F.2d 1072, 1078 (2d Cir. 1972)). Fraud on the court "threatens the very integrity of the judiciary and the proper administration of justice." Gleason, 860 F.2d at 559 (citing Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 246 (1944)). The Second Circuit instructs that allegations of witness perjury and "nondisclosure during pretrial discovery do not constitute grounds for an independent action under Fed. R. Civ. P. 60(b)." Gleason, 860 F.2d at 559-60 (citations omitted).

In correspondence with the court and in the pre-motion conference before me, Plaintiff alleges that defense counsel committed fraud upon the court by fraudulently submitting sworn statements that falsely represented that Plaintiff could withdraw her resignation and by failing to disclose Chancellor's Regulation C-205.[2] However, there is no evidence that counsel colluded

---

[2] Plaintiff also alleges that Defendants back-dated a report regarding another applicant for the principal position for which Plaintiff was not hired. (Plaintiff's Reply Declaration ¶ 20, Ex. G.)

8

with Defendants in a scheme to misrepresent Defendants' resignation withdrawal policy. Therefore, even assuming that Plaintiff's allegations of fraud by Defendants are true, they do not provide this court with a basis to vacate the judgment for fraud upon the court pursuant to Rule 60(b).

Moreover, I find that Plaintiff's allegations lack merit. At the outset, I find that paragraph 26(b), titled "Absence Without Notice", of Chancellor's Regulation C-205 does not apply to Plaintiff's resignation. The BOE received a letter from Plaintiff prior to her being deemed resigned stating in part that "I, therefore, will not be returning to work in the New York City public schools." (DeCanio Dep. at 417-19.) The evidence supports the inference that Plaintiff's letter informing BOE that she would not return after her leave was rescinded was properly deemed a timely resignation. (Lemonedes's August 4, 2005 letter to the court at 6.) Accordingly, I find that Plaintiff's resignation was not considered an "absence without notice" as provided by paragraph 26(b) of Chancellor's Regulation C-205.

Plaintiff correctly notes that Paragraph 28 of Chancellor's Regulation C-205, titled "Withdrawal of Resignation Generally," "makes clear that there isn't any mechanism for automatic reinstatement of tenured supervisors." (Plaintiff's May 27, 2005 Memorandum of Law at 17.) However, Plaintiff is incorrect that defense counsel misrepresented to the court that Plaintiff could have been automatically reinstated. Taken at face value, counsel's remark made during defense counsel's closing statement that "[a]ll she has to do is ask for her resignation to be withdrawn and it is," implies that BOE would have automatically reinstated Plaintiff had she

---

However, even if this allegation were true, it would not constitute a fraud upon the court, because the report itself involves a collateral matter that could not have resulted in an erroneous verdict by the jury.

requested. However, in almost the same breath, Defendants' counsel said that "[w]ithdrawal of resignation may be granted upon application subject to the regulations enforced at the time of such applications." (Tr. at 1292.) Under the circumstances, I conclude that defense counsel did not mislead the jury into believing that a withdrawal of resignation was tantamount to an automatic reinstatement.

Similarly, defense counsel's cross-examination of Plaintiff's damages expert in which counsel stated "you know that she could have gone back to work at the [BOE]," (Tr. at 1520), did not represent that Plaintiff would have been automatically reinstated. Furthermore, as the jury found entirely for the Defendants, the quantum of Plaintiff's damages was a collateral issue that would not have affected the verdict. Therefore, I conclude that Defendants' counsel did not misrepresent any facts to the court, and that the nondisclosure of Chancellor's Regulation C-205 caused no prejudice to Plaintiff. Rather, defense counsel argued, consistent with Chancellor's Regulation C-205, that she could have been reinstated had she applied and been accepted by BOE pursuant to BOE's regulations.

Moreover, Plaintiff knew or should have known that this was Defendants' understanding of the term "withdrawal of resignation" well before the trial. In DeCanio's deposition before the trial, she stated that a resigned employee who wishes to return to BOE "can apply for a job vacancy. *If they are selected*, they get . . . all of their seniority and service back. If its [sic] within the five years from the date of the resignation." (Defendants' Aug. 4 letter brief in opposition to Plaintiff's Motion to Vacate ("Def. Opp.") Ex. 2 at 21 (emphasis added).) From this deposition, Plaintiff knew or should have known that an applicant must first be hired for a position before her resignation can be withdrawn, which is consistent with Chancellor's Regulation C-205. Therefore, neither the Plaintiff nor the court interpreted or should have

10

interpreted defense counsel's closing statement as a representation that if Plaintiff wrote to BOE to withdraw her resignation, that she would be automatically reinstated.

In conclusion, Plaintiff's allegations of witness perjury and nondisclosure of Chancellor's Regulation C-205 do not constitute fraud upon the court. Moreover, I do not find that Plaintiff's recent discovery of Chancellor's Regulation C-205 is an "extraordinary circumstance" or that its absence caused an erroneous jury verdict that merits post-trial intervention. Lacking evidence of a scheme on the part of an officer of the court to frustrate the administration of justice through fraud, Plaintiff's motion cannot succeed.

   D.  *Sanctions Against Defendants' Counsel*

In her motion, Plaintiff also moves that this court find that Defendants' alleged misrepresentations to the court constitute misconduct such that sanctions should be imposed against counsel pursuant to, *inter alia*, Fed. R. Civ. P. 11. As discussed supra, I do not find that Defendants' counsel misrepresented any facts to the court, or otherwise engaged in sanctionable conduct.

   E.  *Plaintiff's Current Ability to Apply for Positions in the Department of Education*

Lastly, in the pre-motion conference on July 14, 2005, Plaintiff stated that she was unable to apply for positions at BOE because she was designated "resigned" and her licenses were revoked. (Pre-Motion Conference Tr. at 2-6.) Plaintiff relies on her interpretation of Chancellor's Regulation C-205 that a resignation operates to revoke applicable New York City licenses, and that her resignation cannot be withdrawn without the express authorization by BOE, and her observation that 216 supervisory positions were filled during this school year, and she was never contacted by BOE regarding these positions. (Plaintiff's Oct. 7, 2005 letter to the court at 2.) She also relies on an electronic communication she received from the Department of

Education ("DOE", formerly BOE) which stated that there was no record that her resignation had been withdrawn. (Plaintiff's Reply Declaration ¶ 4.)

However, I conclude that the DOE understands that there is no bar on Plaintiff's application for a position at BOE. As stated supra, I do not find that Chancellor's Regulation C-205 required the revocation of Plaintiff's licenses. While it is true that an applicant for a position at DOE must have valid New York City licenses, (Chancellor's Regulation C-205 at 5), this regulation does not state that a resignation operates to revoke the license(s) of the resigning employee. Furthermore, the evidence shows that Plaintiff's licenses have not been revoked. Defendants submitted a Declaration from Joann Molter, Director for the Office of Supervisor Support Services for DOE, which states that she reviewed Plaintiff's license history, and that "these licenses had never been terminated." (Molter Decl. ¶ 4.) Molter also supplied this court with a current printout of Plaintiff's license history, which demonstrates that the licenses are valid. (Molter Decl. Ex. A.)

I also find that there is no bar to Plaintiff's future employment at DOE caused by her designation as "resigned." Defendants admit that Plaintiff is considered "resigned". However, Defendants submitted a Declaration from Lawrence Becker, Deputy Executive Director of the Office of Human Resources for DOE, which states that the designation of "resigned" can only be changed once the employee has been rehired. (Declaration of Lawrence Becker ¶ 6.) As a result, being designated "resigned" is not a bar to reemployment by DOE, but rather an administrative category for former personnel who were not terminated. (Id.) In conclusion, I accept Defendants' submissions as evidence that DOE's understanding is that Plaintiff is eligible to apply for any open DOE positions.

Contrary to Plaintiff's suggestions in her recent correspondence with this court, (Plaintiff's Aug. 29, 2005 letter to the court at 1), I have never held that Plaintiff is entitled to a position at DOE. Rather, the court asked Defendants' counsel to communicate to DOE that Plaintiff is eligible to apply for a position with DOE. As Defendants have provided sworn statements from DOE to that effect, and as the evidence before this court shows that Plaintiff is eligible to apply for a position at DOE, this court declines to take further action in this matter.

### III. CONCLUSION

For the foregoing reasons, the Plaintiff's motion is DENIED in all respects.

SO ORDERED.

Dated: November 7, 2005　　　　　　　　　　　　　　／s/ Nicholas Garaufis　　
　　　　Brooklyn, NY　　　　　　　　　　　　　　　　NICHOLAS G. GARAUFIS
　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge